**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ELAINE M. FABER, TRUSTEE UNDER THE IRREVOCABLE TRUST OF RAYMOND FAHRNER AND VICTORIA FAHRNER, DECEASED**<br><br>                    **Plaintiff**<br><br>          **v.**<br><br>**WELLS FARGO BANK**<br><br>                    **Defendant** | **CIVIL ACTION NO. 15-00191** |

**PAPPERT, J.**                                                     **APRIL 13, 2015**

<u>**MEMORANDUM**</u>

Victoria Fahrner ("Fahrner") died at the age of 92 from Alzheimer's dementia. In the four years prior to Fahrner's death, Defendant Wells Fargo Bank ("Wells Fargo") honored forged checks drawn on her account totaling nearly $400,000. The Personal Representative of Fahrner's estate sued Wells Fargo, alleging violations of Pennsylvania's Uniform Commercial Code ("UCC") and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Wells Fargo moves to partially dismiss the UCC claim and fully dismiss the UTPCPL claim. The Court grants the motion.

**Factual and Procedural Background**

Plaintiff Elaine Faber ("Faber") brings this action in her capacity as the Trustee of the Raymond A. and Victoria A. Fahrner Irrevocable Trust, as well as in her capacity as Personal Representative of the Estate of Victoria A. Fahrner. (Am. Compl. ¶ 1, Doc. No. 9.) During her lifetime, Fahrner maintained a checking account with Wells Fargo. (*Id.* ¶ 3.) When she opened this account, Fahrner gave Wells Fargo a signature card with her signature on it. (*Id.* ¶ 6.) She then signed numerous checks to draw upon her account, which should have made Wells Fargo

and its employees familiar with her signature.  (*Id.* ¶ 7.)  At some point no later than January 1, 2008, Fahrner became mentally incapacitated and unable to handle her financial affairs.  (*Id.* ¶ 10.)  She died of Alzheimer's dementia on February 25, 2012.  (*Id.* ¶ 15.)

Between May 3, 2008 and February 25, 2012, Wells Fargo honored a number of forged checks to draw upon Fahrner's account.  (*Id.* ¶¶ 8, 9.)  In all, these forged checks totaled $388,313.43.  (*Id.* ¶ 9.)  These forgeries were not discovered until after Fahrner's death when Faber was appointed Personal Representative and given documents relating to Fahrner's Wells Fargo account.  (*Id.* ¶ 11.)  Faber immediately contacted Wells Fargo regarding the forgeries. (*Id.*)

Faber then commenced this action by filing a praecipe for writ of summons in the Delaware County Court of Common Pleas on May 12, 2014.  (*See* Notice of Removal at 11, Doc. No. 1.)[1]  She filed her state court complaint against Wells Fargo on December 9, 2014.  (*Id.* at 14-19).  The complaint contained two counts: violation of the UCC (Count I) and violation of the UTPCPL (Count II).  (*Id.*)

Wells Fargo removed the action to this Court based on diversity of citizenship.  (*Id.* at 1-5.)  It then filed a motion to dismiss the complaint.  (Doc. No. 5.)  Faber responded to the motion by filing an amended complaint, containing counts identical to those in the original complaint. (Doc. No. 9.)  Wells Fargo now moves to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 11.)  Wells Fargo seeks partial dismissal of Faber's UCC claim based on the applicable statute of limitations.  (*Id.* at 10-12.)  It seeks full dismissal of Faber's UTPCPL claim for failure to state a claim upon which relief can be granted.  (*Id.* at 12-15.)

---

[1]     All page number references for items on the docket reflect the page numbers assigned by the Court's ECF system.

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When making this determination, the court can consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[2] *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The district court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

**Discussion**

<u>Count I – Violation of the Uniform Commercial Code</u>

Faber claims that Wells Fargo violated Article 4 of the UCC, 13 Pa.C.S.A. §§ 4101, *et seq.*, by honoring the forged checks. (Am. Compl. ¶ 8.) Wells Fargo contends that the UCC's three-year statute of limitations bars these claims to the extent they are based on checks negotiated before May 12, 2011, three years before Faber initiated this action. (Mot. to Dismiss at 4, Doc. No. 11; Reply Br. at 1 n.1, Doc. No. 13.) In response, Faber argues that Wells Fargo's

---

[2]     Faber argues that the Court must treat Wells Fargo's motion to dismiss as a motion for summary judgment because Wells Fargo cites to Faber's state court filings to establish the date on which Faber commenced this action. Those filings are matters of public record and are attached as exhibits to Wells Fargo's notice of removal. The Court can consider these documents in deciding Wells Fargo's motion to dismiss without converting it to a motion for summary judgment. *See Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994) ("In considering a 12(b)(6) motion, a court [may take into account] matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint . . . .").

fraudulent concealment and Fahrner's mental incapacity tolled the running of the limitations period.  (Opp'n Br. at 2-3, Doc. No. 12; Sur-reply Br. at 1, Doc. No. 14[3].)

A statute of limitations defense may be raised by a Rule 12(b)(6) motion where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quotation omitted); *see also Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).  Here, Faber alleges that Wells Fargo violated UCC § 4401(a) by honoring forged checks.[4]  The applicable limitations period for violations of § 4401(a) is three years from the time the action accrues.  *See* 13 Pa.C.S.A. § 4111.  A cause of action under § 4401 accrues at the time the item is negotiated.  *See Estate of Hollywood v. First Nat. Bank of Palmerton*, 859 A.2d 472, 482 (Pa. Super. Ct. 2004) ("When the property converted is a negotiable instrument, the damage is done, and the tort is complete when the instrument is negotiated . . . .") (quotation omitted).

Wells Fargo properly raises its statute of limitations defense by way of Rule 12(b)(6). Faber alleges that the forged items were negotiated between May 3, 2008 and February 25, 2012. (Am. Compl. ¶ 9.)  She commenced this action on May 12, 2014.  (Notice of Removal at 11.) Therefore, on the face of the amended complaint, the statute of limitations bars Faber's UCC claim to the extent it is based on checks negotiated before May 12, 2011.

Faber argues that the limitations period did not begin to run until the forgeries were discovered after Fahrner's death in February 2012.  Pennsylvania's "discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that

---

[3]     In deciding Wells Fargo's motion, the Court considers Faber's sur-reply, even though it was filed without leave of court, in violation of the Local Rules of Civil Procedure and the judge's policies and procedures.
[4]     Section 4401(a) authorizes a bank to charge an item against a customer's account only when the charge "is authorized by the customer and is in accordance with any agreement between the customer and the bank."  13 Pa.C.S.A. § 4401(a).

his injury has been caused by another party's conduct." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)).  Absent a bank's fraudulent concealment, however, the discovery rule does not toll the statute of limitations for claims under § 4401.  *See Menichini v. Grant*, 995 F.2d 1224, 1231 (3d Cir. 1993) ("[T]he Code explicitly mandates 'mechanical' application of the statute of limitations notwithstanding the customer's failure to discover a forged indorsement within the relevant limitations period."); *see also Estate of Hollywood*, 859 A.2d at 482 (ruling that "in the absence of evidence of fraudulent concealment by the defendant," the discovery rule does not apply to toll the statutes of limitation in Articles 3 and 4 of the UCC).  "[F]or fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied."  *Kingston Coal Co. v . Felton Min. Co. Inc.*, 690 A.2d 284, 291 (Pa. Super. Ct. 1997).  "Mere silence in the absence of a duty to speak . . . cannot suffice to prove fraudulent concealment."  *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992).

Here, Faber has not alleged any affirmative acts by Wells Fargo that amount to fraudulent concealment.  She simply alleges that Wells Fargo honored checks that they knew or should have known were forgeries.  (*See* Am. Compl. ¶ 8.)  She does not allege that Wells Fargo did anything to hide the fact that it had honored these checks.  Without allegations that Wells Fargo took affirmative steps to conceal its conduct, there is no basis on which to depart from the strict application of the three-year limitations period in § 4111.  *See, e.g.*, *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 787 (E.D. Pa. 2008) (refusing to toll the limitations period where plaintiff did not allege "any affirmative conduct on the part of [defendant] or any of its employees that would demonstrate the required independent act of concealment.").

*Lichtenstein v. Kidder Peabody & Co., Inc.*, 840 F. Supp. 374 (W.D. Pa. 1993), cited by Faber as "a case similar to the present case," supports this conclusion. (Opp'n Br. at 2.) There, the court ruled a bank's constructive fraud tolled the applicable UCC statute of limitations. *Lichtenstein*, 840 F. Supp. at 386. Faber characterizes *Lichtenstein* as a case in which a bank "'looked the other way' while a husband forged many checks drawn upon his wife's account." (Opp'n Br. at 3.) To the contrary, *Lichtenstein* involved affirmative fraudulent conduct by a bank employee. *See Lichtenstein*, 840 F. Supp. at 385. Specifically, the employee knew that the husband "was up to no good" and "helped [the husband] hide his misdeeds." *Id.* at 380. The employee's affirmative acts "covered [the husband's] tracks," preventing the wife from discovering that the forgeries had occurred. Here, the amended complaint does not contain similar allegations of affirmative acts of concealment sufficient to toll the running of the limitations period.

Nor is Fahrner's alleged Alzheimer's dementia sufficient to toll the running of the limitations period. (Am. Compl. ¶¶ 10, 15.)[5] This argument is essentially a contention that the limitations period should have tolled because Fahrner was unable to discover the alleged violation due to her mental incapacity. This theory has been rejected. *See, e.g.*, *Estate of Hollywood*, 859 A.2d at 473 ("Notwithstanding the alleged inability of plaintiff's decedent to discover the Code violations at issue [due to mental incapacity], the plain language of the UCC counsels mechanical application of the respective statutes of limitation, making no allowance for importation of the discovery rule or any other principle of equitable tolling."). Fahrner's

---

[5]    Faber makes the conclusory statement that Fahrner was "mentally incapacitated so as to be unable to handle her financial affairs since at least January 1, 2008." (Am. Compl. ¶ 10.) She then goes on to allege that Fahrner "died on February 25, 2012 at the age of 92, and the cause of [] death, according to her official death certificate, was Alzheimer's dementia." (Am. Compl. ¶ 15.) Construing these allegations in the light most favorable to Faber, the Court considers these two paragraphs to allege that Fahrner was suffering from Alzheimer's dementia at least as early as January 1, 2008.

Alzheimer's dementia cannot overcome the general principle that the discovery rule does not toll the statute of limitations for claims under § 4401.  *See id.*

The Court recognizes that strict and mechanical application of the statute of limitations in the face of alleged mental incapacity may have severe consequences.  Nevertheless, such an application is in accordance with the general common law rule in Pennsylvania that mental incapacity does not toll the running of the relevant limitations period, a rule that the legislature later codified as applicable to civil actions generally.  *See Walker v. Mummert*, 146 A.2d 289, 291 (Pa. 1958) (ruling that the incapacity of a plaintiff who is *non compos mentis* at the time of injury does toll the running of the limitations period for personal injury actions); *see also Walters v. Ditzler*, 227 A.2d 833, 835 (Pa. 1967) ("[T]he statute of limitations will run against persons under a disability, including . . . incompetents."); *Pearce v. Salvation Army*, 674 A.2d 1123, 1124 n.3 (Pa. Super. Ct. 1996) ("In 1978, the Judicial Code was amended in order to codify existing law precluding extension of the statute based on . . . insanity . . . ."); 42 Pa.C.S.A. § 5533(a) ("Except as otherwise provided by statute, insanity . . . does not extend the time limited by this subchapter for the commencement of a matter.").

Moreover, as many courts have recognized, strict application of UCC statutes of limitation promotes certainty in commercial transactions, a fundamental purpose of the UCC.  *See, e.g. Menichini*, 995 F.2d at 1231; *see also, e.g.*, *John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 346 F.3d 727, 734 (6th Cir. 2003) ("[S]trong public policies favoring finality in commercial transactions, protecting a defendant from stale claims, and requiring a plaintiff to diligently pursue his claim outweigh the prejudice to plaintiffs and militate against applying the discovery rule in the context of commercial conversion cases.") (quotation omitted); *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 445-46 (7th Cir. 2005) ("The rationale most often

cited in support of the majority perspective is that application of the discovery rule would be inimical to the underlying purposes of the UCC, including the goals of certainty of liability, finality, predictability, uniformity, and efficiency in commercial transactions.").

As a result, accepting all of the factual allegations in the amended complaint as true, neither fraudulent concealment nor mental incapacity tolled the three-year limitations period applicable to Faber's claims under § 4401.  Faber commenced this action on May 12, 2014 by filing a praecipe for writ of summons in state court.  *See Denochick v. Demag*, 155 F. Supp. 2d 386, 387-88 (E.D. Pa. 2001) ("The filing of the praecipe for a writ of summons stops the running of the statute of limitations [under Pennsylvania law].").  Only those checks negotiated within the three-year period before that date are actionable.  *See* 13 Pa.C.S.A. § 4111.  Faber's UCC claims based on checks negotiated before May 12, 2011 are dismissed accordingly.

Count II – Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Faber also alleges that Wells Fargo violated the UTPCPL.  (Am. Compl. ¶ 14.)  Wells Fargo moves to dismiss this claim, arguing that Faber fails to allege facts sufficient to show that Wells Fargo engaged in any fraudulent or deceptive conduct or that Fahrner justifiably relied on any allegedly fraudulent or deceptive conduct by Wells Fargo.

Faber brings her claim under the UTPCPL's "catchall" provision, which make it unlawful to "[e]ngag[e] in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  75 P.S. § 201-2(4)(xxi).  To state a cause of action under the catchall provision, a private plaintiff must allege facts to show that the defendant engaged in fraudulent or deceptive conduct and that the plaintiff justifiably relied on that fraudulent or deceptive conduct to his or her detriment.  *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a

private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.").  To be justifiable, a party's reliance must be reasonable.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir.1992).

Here, Faber alleges that Wells Fargo engaged in "fraudulent or deceptive conduct" by "holding forth to the public and to Plaintiff that the forged signatures . . . were the signatures of Victoria A. Fahrner when in fact they were not . . . ."  (Am. Compl. ¶ 14.)  Even assuming that this constitutes fraudulent or deceptive conduct, which the court does not decide, the amended complaint contains no facts to show that Fahrner justifiably relied on this conduct to her detriment.  For one, the amended complaint contains no facts to suggest that Fahrner justifiably relied or acted on any alleged deceptive conduct that Wells Fargo directed toward the public. *See, e.g.*, *Eli Research Inc. v. United Commc'ns Group, LLC*, 312 F. Supp. 2d 748, 760 (M.D.N.C. 2004) ("Third parties, not Eli, were the targets of the alleged deception.  As such, if anyone has a claim for fraud, it is the third parties, not Eli.").  The amended complaint is equally devoid of facts to show that Fahrner justifiably relied on any statement Wells Fargo made to her about the authenticity of her own signature.  *See Fort Washington Res., Inc. v. Tannen*, 858 F. Supp. 455, 460 (E.D. Pa. 1994) ("Whether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false.").

The amended complaint contains no more than the legal conclusion that Fahrner suffered a loss as the direct result of her "detrimental reliance upon" Wells Fargo's conduct.  (Am. Compl. ¶ 16.)  It contains no "further factual enhancement" to substantiate this "naked assertion."  *Bell*

*Atl. v. Twombly*, 550 U.S. 544, 557 (2007).  As such, Faber fails to state a plausible claim that Wells Fargo violated the UTPCPL.  Count II is dismissed.

<u>Leave to Amend</u>

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *see also Phillips*, 515 F.3d at 236.  An amendment is futile "if the complaint, as amended would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1999) (citation omitted).  When determining whether an amendment is futile, the Court applies the same standard of legal sufficiency as under Federal Rule of Civil Procedure 12(b)(6).  *Id.*

Wells Fargo initially filed a motion to dismiss Faber's original complaint, asserting substantially the same grounds for dismissal as it advocates here.  (Doc. No. 5.)  In response, Faber exercised her right to amend under Rule 15(a)(1) of the Federal Rules of Civil Procedure, rendering Wells Fargo's motion moot.  (Doc. No. 9.)  The amended complaint added allegations regarding Fahrner's Alzheimer's dementia, ostensibly in an attempt to overcome the UCC limitations period.  (*Id.* ¶¶ 10, 15.)  As explained above, those allegations are insufficient to toll the running of the limitations period.  The amended complaint also added a conclusory allegation that Fahrner justifiably relied on Wells Fargo's alleged deceptive conduct.  (*Id.* ¶ 15.)  As explained above, without factual backing, this conclusory statement is not sufficient to survive Wells Fargo's motion to dismiss.

Nevertheless, this is the first time the Court has assessed Faber's allegations and explained their deficiencies.  The Court, therefore, will give Faber the opportunity to cure those deficiencies.  If Faber can allege *facts* sufficient to state a plausible claim for fraudulent

concealment, she may do so.  Likewise, if Faber can allege *facts* sufficient to state a plausible

claim that she justifiably relied on any deceptive or fraudulent conduct by Wells Fargo, she may

do so.

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.